WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


EMILY ROSEBERRY,                    )
                                   )
                    Plaintiff,     )
                                   )
        vs.                        )
                                   )
PAULINE HARVEY, et al.,            )
                                   )          No. 4:21-cv-0008-HRH
                    Defendants.    )
_____)


O R D E R

Motion to Dismiss

Defendants move to dismiss plaintiff's complaint.[1]  This motion is opposed.[2]  Oral

argument was requested[3] but is not deemed necessary.

Background

Plaintiff is Emily Roseberry.  Defendants are Pauline Harvey, Qaiyaan Harcharek, and

the North Slope Borough School District (NSBSD).  Plaintiff has sued Harvey in both her

_____

[1]Docket No. 9.

[2]Docket No. 13.

[3]Docket No. 15.

-1-

individual capacity and her official capacity. Plaintiff has sued Harcharek in his individual capacity only.

Plaintiff alleges that she began working for NSBSD in 2001, "first as a teacher and later as a school principal."[4] Plaintiff alleges that in June 2019, she "resigned her job with the NSBSD" and began working on drafting "an application for a Charter School, named Qargi Academy."[5] Plaintiff alleges that in March 2020, the NSBSD's Board of Education approved the application for the Qargi Academy.[6]

Plaintiff alleges that as she

> understood it, per Alaska Statute § 14.03.255(a), the Qargi Academy would operate like a school in the NSBSD, except that it was exempt from NSBSD's textbooks, programs, curriculum, and scheduling requirements. Also, the Qargi [Academy] was exempt from the authority under Alaska Statute § 14.14.130(c), which established the NSBSD's Superintendent.[7]

Plaintiff alleges that Harvey, as the NSBSD superintendent, "had authority over the administration of all the schools in the NSBSD except for the Qargi Academy" and that

---

[4]Complaint for Damages at 2, ¶ 2.1, Docket No. 1.

[5]Id. at 2, ¶ 2.2.

[6]Id. at 2, ¶ 2.3.

[7]Id. at 3, ¶ 2.4.

-2-

"[p]er Alaska Statute § 14.03.255(a)(2), the administrative control for the Qargi Academy resided with its Principal."[8]

Plaintiff alleges that in July 2020, she was selected to be the principal of the Qargi Academy by the school's academic policy committee (APC), "in accordance with Alaska Statute § 14.03.255(a)(2), the Qargi Academy's Contract with the NSBSD Board of Education, and the Qargi Academy APC Bylaws."[9] Plaintiff alleges that the NSBSD Board of Education "provided its pro forma approval of [her] contract on May 13, 2020" and "her first day as Qargi Principal was July 13, 2020."[10] Plaintiff alleges that "[p]er Alaska Statute § 14.03.255(a)(2), the Qargi Principal was specifically not selected by Superintendent Harvey. Further, per Qargi Academy APC Bylaws, Superintendent Harvey was not authorized to oversee, supervise, or terminate the contract of Qargi Principal Roseberry."[11] Plaintiff alleges that "[a]ll authority over Principal Roseberry resided solely with the Qargi Academy APC."[12]

Plaintiff alleges that "[s]hortly after beginning her duties as Qargi Principal, [she] identified contract compliance issues concerning the statutory independence between Qargi

---

[8]Id. at 3, ¶ 2.5.

[9]Id. at 3, ¶ 2.8.

[10]Id. at 3, ¶ 2.7.

[11]Id. at 3-4, ¶ 2.8.

[12]Id. at 4, ¶ 2.8.

-3-

Academy and the NSBSD."[13]  More specifically, plaintiff alleges that she "made many attempts to obtain full access to the Academy bank account," but that "CFO Limani, at the direction of Superintendent Harvey[,] actively limited [her] access to financial records and limited her authority to act. . . ."[14]

Plaintiff alleges that "[o]n Sunday, September 6, 2020," Harvey advised her, via text message, that Harvey had "received a text message from an anonymous source claiming that a Qargi teacher was involved in an inappropriate sexual relation[ship] with a student under 18 years old."[15]  Plaintiff alleges that she believes that Harvey "failed to immediately contact the alleged victim" and failed to report the information to OCS.[16]

Plaintiff alleges that she contacted the NSBSD Human Resource Manager (Naomi Digitaki) the next morning and asked Digitaki "to investigate the allegation against the Qargi teacher."[17]

Plaintiff alleges that on September 8, 2020, Kawa Danner, her administrative assistant, texted her, stating "that she [Danner] needed to report something student 'W'

---

[13]Id. at 4, ¶ 2.10.

[14]Id. at 4, ¶ 2.11.

[15]Id. at 4, ¶ 2.12.

[16]Id. at 5, ¶ 2.14.

[17]Id. at 6, ¶ 2.16.

reported to her 'several months ago.'"[18] Plaintiff alleges that Danner said "that 'W' had heard of an inappropriate incident between a Qargi teacher and an NSBSD student" and "that 'W' had mentioned the information months ago, was not believed, and actually got in trouble for lying about it."[19] Plaintiff alleges that "[i]n the same text thread, Ms. Danner stated that she needed to quit her administrative assistant job because she was having trouble with computers."[20]

Plaintiff alleges that "[o]n September 11, 2020, Ms. Danner sent a follow up text message to [her] stating that she [Danner] spoke to the NSBSD district attorney about the information she had about the Qargi teacher and she also contacted the police to file a report."[21] Plaintiff alleges that she "replied to Ms. Danner by writing: 'thank you for your disclosure.'"[22]

Plaintiff alleges that on September 15, 2020, she noticed that Danner had not been coming to work "despite saying that she would remain on her job until September 22, 2020[.]"[23] Plaintiff alleges that she "sent an email asking that Danner make sure she [was]

---

[18] Id. at 6, ¶ 2.18.

[19] Id.

[20] Id.

[21] Id. at 7, ¶ 2.19.

[22] Id.

[23] Id. at 7, ¶ 2.20.

-5-

showing up at the Qargi campus to do her work, rather than working from home."[24] Plaintiff alleges that in response, "Ms. Danner sent a threatening text message[,]" in which she stated: "'Why are you trying to get me in trouble with HR?  After everything I've done for this charter school?  Okay, I will also go through HR with everything I have witnessed here.  This is not fair to me.'"[25]

Plaintiff alleges that after Danner sent the threatening text message to her, Danner then sent an email to Digitaki, Harvey, and plaintiff, in which Danner "falsely claimed that [plaintiff] 'instructed' her to 'not report suspected child abuse of a minor' by one of Qargi's teachers."[26]  Plaintiff alleges that in the email, "Danner also identified seven additional complaints against [her,] all of which were baseless and sent in retaliation of [plaintiff's] earlier text message."[27]  Plaintiff alleges that Danner also sent emails to the members of the NSBSD Board of Education, in which she "presented specific false allegation[s]" that plaintiff "had made harmful statements about Defendant Qaiyaan Harcharek[.]"[28]

Plaintiff alleges that the next day, on September 16, 2020, Danner sent an email to Harvey and Digitaki stating that "she was 'not confident that 'her September 15, 2020

---

[24]Id.

[25]Id. at 7, ¶ 2.21.

[26]Id. at 7, ¶ 2.22.

[27]Id. at 7-8, ¶ 2.22.

[28]Id. at 8, ¶¶ 2.23-2.24.

complaint would be addressed 'appropriately' or brought to the attention of the NSBSD Board of Education, and so she filed a 'complaint to the State of Alaska' alleging, falsely, that [plaintiff's] conduct had violated the Code of Ethics and Teaching Standards."[29]

Plaintiff alleges that also on September 16, 2020, Digitaki emailed Harvey and others

> an 'update on how HR has handled the allegations against' the Qargi teacher. In her email, Ms. Digitaki outlined that [plaintiff] had first informed her of the allegations against the Qargi teacher on September 7, 2020. . . . Ms. Digitaki stated that she met with the Qargi teacher on September 8, 2020. At the meeting the Qargi teacher pointed out that the allegations against her had been investigated by OCS and Utqiagvik Police and all allegations were dismissed. Ms. Digitaki confirmed that both the Police and OCS verified the Qargi teacher's claims.[30]

Plaintiff alleges that on September 23, 2020, Harcharek "submitted a complaint to the State of Alaska against" her and that this complaint was based "solely on hearsay[] and false statements" that had been made by Danner.[31]

Plaintiff alleges that "Harvey instructed Ms. Digitaki to place the Qargi teacher on administrative leave, even though OCS confirmed to Digitaki that its case against the Qargi teacher . . . had been closed."[32] Plaintiff alleges that "[t]his conduct by Superintendent

---

[29]Id. at 8, ¶ 2.25.

[30]Id. at 9, ¶ 2.26.

[31]Id. at 9, ¶ 2.28.

[32]Id. at 9, ¶ 2.29.

-7-

Harvey violated the Qargi Contract with the NSBSD, which stated that the Qargi Principal

. . . was responsible for the hiring and firing of Qargi staff – subject only to the APC."[33]

Plaintiff alleges that during this same time, Harvey "interfered with the contractual prerogatives that the Qargi Contract, APC Bylaws, and State Statutes vested in her as the Principal of the Academy."[34]  For example, plaintiff alleges that "Harvey refused to put [plaintiff's] name on the Qargi accounts."[35]

Plaintiff also alleges that on September 28, 2020, she attended a Zoom meeting, which had been set up by the NSBSD's attorney, at which "she answered the district's questions" about Danner's complaints.[36]  Plaintiff alleges that she did not view this as "any type of disciplinary hearing."[37]

Plaintiff alleges that on October 17, 2020, she "learned that the NSBSD's investigation into Ms. Danner's complaints had been completed."[38]  Plaintiff alleges that she requested a copy of the investigation results and was told by the NSBSD attorney, Ms. Bull, that "she

---

[33] Id.

[34] Id. at 10, ¶ 2.30.

[35] Id.

[36] Id. at 10, ¶¶ 2.31-2.33.

[37] Id. at 10, ¶ 2.32.

[38] Id. at 11, ¶ 2.35.

would have a response to the request in a week."[39]  Plaintiff alleges that Ms. Bull also informed her that "Harvey was conducting a separate investigation of a new complaint against" plaintiff.[40]

Plaintiff alleges that on October 19, 2020, she informed Harvey, Ms. Bull, and the Qargi APC that she believed that "Harvey was violating her due process rights by investigating Qargi complaints rather than allowing these complaints to be processed according to the Charter contract."[41]

Plaintiff alleges that on October 26, 2020, she was "informed by Qargi APC President Crawford Patkotak, that he had been contacted by" Harvey who "informed him that the Board tasked her to fire [plaintiff] from her position as Qargi Principal."[42]  Plaintiff also alleges that Patkotak told her "that APC Members had been contacted directly by Qaiyaan Harcharek who informed them that an investigation was happening on" plaintiff.[43]

Plaintiff alleges that on that same day, October 26, 2020, she "finally received a copy of the NSBSD's Investigation Report into Ms. Danner's complaints."[44]  Plaintiff alleges that

---

[39] Id.

[40] Id.

[41] Id. at 11, ¶ 2.36.

[42] Id. at 11, ¶ 2.37.

[43] Id.

[44] Id. at 12, ¶ 2.38.

it was then that she learned that Harvey had shared the report with "the entire NSBSD Board of Education" and that the report "contained numerous slanderous and clearly incorrect statements."[45]  Plaintiff alleges that "[m]ost egregiously, the report falsely stated that [she] violated NSBSD Board policies, regulations and Alaska Statutes by failing to report allegations against the Qargi teacher."[46]

Plaintiff alleges that on November 18, 2020, she, "through her legal counsel, sent a response to Superintendent Harvey's Investigation Report and also responded to the request for cooperation with the second complaint against" her.[47]  Plaintiff alleges that

> [i]n her response, [she] pointed out that the Superintendent was not authorized to investigate complaints from Qargi employees. Further, she pointed out that the Investigation Report was slanderous.  [She] gave Superintendent Harvey an opportunity to correct the record that had been submitted to the NSBSD Board of Education or a lawsuit will follow.[48]

Plaintiff alleges that this response "was structured as an official complaint on a matter of public concern" and that "[t]he public concern at issue was the effective management of the Qargi Academy, which was unable to operate when Superintendent Harvey refused to

---

[45]Id. at 12, ¶¶ 2.38-2.39.

[46]Id. at 12, ¶ 2.39.

[47]Id. at 12, ¶ 2.40.

[48]Id.

-10-

recognize the fact that Qargi's principal had authority vested by the Alaska Statutes, Charter Contract, and APC Bylaws[.]"[49]

Plaintiff alleges that in response to her November 18, 2020 letter, the NSBSD Board of Education sent her a letter informing her "that she was being directed to participate in an investigatory conference to address the merits in the second complaint against her by a Qargi employee."[50] Plaintiff alleges that on December 2, 2020, she "had her attorney decline the demand that she participate in the Investigatory Hearing."[51] Plaintiff alleges that she "stated that she was open to an interactive dialogue concerning clarifying the relationship between the NSBSD and Qargi Academy, but she would not participate in a disciplinary hearing scheduled by" Harvey because Harvey "did not have supervisory authority over her position, given that she was hired by the Qargi APC."[52]

Plaintiff alleges that on December 15, 2020, she

> received a Notice of Proposed Termination sent at Superinten-dent Harvey's direction. In addition to giving [her] a Notice of Termination, Superintendent Harvey, relying on her authority under State law, declared that [plaintiff] was placed on administra-tive leave, and immediately relieved of all duties. Superinten-

---

[49]Id. at 13, ¶ 2.41.

[50]Id. at 13, ¶ 2.42.

[51]Id. at 13, ¶ 2.44.

[52]Id. at 13-14, ¶ 2.44.

-11-

dent Harvey further stated that [plaintiff] was not authorized to take any action on behalf of the Qargi Academy.[53]

Plaintiff alleges that she responded to the proposed Notice of Termination on December 16, 2020 and "pointed out that she was hired by the Qargi APC, not Superintendent Harvey" and "that until terminated by Qargi APC, she believed she was still the Principal and awaited to hear otherwise from the APC."[54]

Plaintiff alleges that on December 18, 2020, "Superintendent Harvey directed that a letter be sent to [plaintiff] informing her that the NSBSD had held a pretermination hearing, even though [plaintiff] did not attend and the hearing was not requested by, or attended by, any members of the Qargi APC."[55]

Plaintiff alleges that on December 22, 2020, a Notice of Termination was sent to her.[56] Plaintiff alleges that in the "Notice of Termination, Superintendent Harvey made no reference to providing notice or input from Qargi APC. Further, the justification provided by the NSBSD was specifically based on defamatory statements and a complete misunderstanding of the Qargi Charter Contract."[57] Plaintiff alleges that during this time, she "was in direct contact with Qargi APC" and that "[s]he was informed by the Qargi APC that it had

---

[53]Id. at 14, ¶ 2.45.

[54]Id. at 14, ¶ 2.46.

[55]Id. at 14, ¶ 2.47.

[56]Id. at 15, ¶ 2.48.

[57]Id.

-12-

not terminated her employment."[58]  Plaintiff also alleges that "the Qargi APC undertook to obtain independent legal counsel to advise it on the clear encroachments by the NSBSD into the rights and prerogatives of the APC."[59]  However, plaintiff alleges that "Harvey issued a statement to the Qargi APC stating that it did not have any budgetary resources for hiring an independent attorney to address the district's violations of the Qargi Contract."[60]

Plaintiff alleges that she "continued to work as Qargi Principal" until January 5, 2021, at which time Harvey "informed the Qargi APC that she had appointed an interim Principal for Qargi."[61]  Plaintiff alleges that Harvey met with the Qargi APC on January 13, 2021 "to formally inform the APC that she had terminated [plaintiff's] employment and replaced her with another Principal."[62]  Plaintiff alleges that "[i]n addition to appointing a new principal for Qargi, Superintendent Harvey specifically directed that the NSBSD was not permitted to make any payments to" plaintiff.[63]

---

[58] Id. at 15, ¶ 2.49.

[59] Id.

[60] Id. at 15, ¶ 2.50.

[61] Id.

[62] Id. at 15, ¶ 2.51.

[63] Id. at 16, ¶ 2.52.

Plaintiff commenced this action on April 20, 2021 "to address Pauline Harvey's illegal termination of her employment."[64]  Plaintiff contends that her "complaint is focused on the fact that Harvey exerted control over the Qargi Academy despite the specific language" in Alaska statutes and the Qargi Bylaws "prohibiting such conduct."[65]  In her complaint, plaintiff asserts § 1983 First Amendment and due process claims based on the conduct of Harvey and Harcharek.  Plaintiff also asserts a claim under the Alaska Whistleblower Act.

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, defendants now move to dismiss plaintiff's complaint.

## Discussion

"'To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Iqbal, 556 U.S. at 678).  "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully."  Id.  "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of

---

[64]Opposition to Motion to Dismiss at 7, Docket No. 13.

[65]Id.

-14-

entitlement to relief.'" <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 678). "[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" <u>In re Rigel Pharmaceuticals, Inc. Securities Litig.</u>, 697 F.3d 869, 875 (9th Cir. 2012) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." <u>Adams v. U.S. Forest Srvc.</u>, 671 F.3d 1138, 1142-43 (9th Cir. 2012). "However, the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." <u>In re Tracht Gut, LLC</u>, 836 F.3d 1146, 1150 (9th Cir. 2016).

Defendants first move to dismiss plaintiff's § 1983 claims. Section 1983 provides that "[e]very person who, under color of [law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . ." 42 U.S.C. § 1983. "§ 1983 applies to municipalities and other local government units," such as school boards. <u>Hopper v. City of Pasco</u>, 241 F.3d 1067, 1082 (9th Cir. 2001). "[A] suit against public employees in their official capacities is equivalent to a claim against their municipal employer." <u>Santos v. County of Los Angeles Dep't of Children and Family Srvcs.</u>, 299 F. Supp. 2d 1070, 1078 (C.D. Cal. 2004). "Generally, [t]o state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right

-15-

secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Defendants argue that plaintiff's First Amendment claims fail on the first prong. Plaintiff is alleging that she was terminated for exercising her First Amendment rights. A First Amendment retaliation claim against a public employer[66] involves

> "a sequential five-step series of questions: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the [employer] had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the [employer] would have taken the adverse employment action even absent the protected speech."

Desrochers v. City of San Bernardino, 572 F.3d 703, 708–09 (9th Cir. 2009) (quoting Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009)).

"In order for a public employee's speech to be 'protected' under the First Amendment within the meaning of step one . . . , (1) the speech must involve a matter of public concern and (2) the employee's interest in expressing [herself] must outweigh the State's interests in

---

[66]Plaintiff contends that her First Amendment claim is not a claim brought by a public employee against a public employer but is more akin to "a claim by an independent third party contractor" against a public employer. Opposition to Motion to Dismiss at 10, Docket No. 13. This is a distinction without a difference because in either case, plaintiff "must prove that the conduct at issue was constitutionally protected, and that it was a substantial or motivating factor in the termination." Board of County Com'rs, Wabaunsee County, Kan. v. Umbehr, 518 U.S. 668, 675 (1996).

promoting workplace efficiency and avoiding workplace disruption." Brewster v. Board of Educ. of Lynwood Unified School Dist., 149 F.3d 971, 978 (9th Cir. 1998). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). "[E]mployee speech is largely unprotected if it is part of what the employee is paid to do[.]" Janus v. Amer. Federation of State, County, and Mun. Employees, Council 31, 138 S. Ct. 2448, 2471 (2018).

Plaintiff argues that the speech at issue here was constitutionally protected because "it addresses 'a matter of legitimate public concern[,]'" namely that Harvey was abusing her authority. Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003) (quoting Pickering v. Bd. of Educ., 391 U.S. 563, 571 (1968)). Plaintiff contends that her protected speech "addressed jurisdictional issues" because it was directed at the issue of whether the Qargi principal position fell under the administrative control of Harvey and that "it did not deal with office politics or personal disputes."[67] Plaintiff insists that her speech that Harvey did not have the authority to terminate her as the Qargi Academy principal addressed a matter of public concern, namely a charter school's independence from the control of a district superintendent. And, plaintiff argues that this speech was not related to her job duties as it was not her job duty to oppose Harvey's inappropriate exercise of authority over a charter

---

[67]Opposition to Motion to Dismiss at 11, Docket No. 13.

school.  Plaintiff argues that any complaints she made about Harvey's inappropriate exercise of authority were made as a member of the public who was interested in the Qargi Academy's success, and not as principal of the Qargi Academy.

In her complaint, plaintiff alleges that she was terminated for the statements she "made to the NSBSD to the effect that Harvey was interfering with Qargi Academy's rights to handle its own internal personnel issues, have the principal's name on the Qargi bank accounts, and that only the Qargi APC could terminate the Academy's principal."[68] She also alleges that she twice pointed out that Harvey "instituted an investigation [concerning] Qargi personnel rather than directing the complaint" to plaintiff, that she "pointed out that" Harvey "was not authorized to investigate complaints from Qargi employees[,]" that she "frequently, and often, spoke" with Harvey "identifying incidents where Harvey . . . refus[ed] to allow [plaintiff] to have her name on Qargi bank accounts," and that "[o]n several occasions [plaintiff] made clear" to Harvey that plaintiff "did not believe that her position as Qargi Academy principal was under the direction [or] review" of Harvey.[69]

The speech plaintiff has alleged was directed to Harvey and the NSBSD Board of Education and primarily concerned Harvey's attempt to assert supervisory authority of plaintiff.  This speech involved plaintiff's job duties as the principal of the Qargi Academy and her ongoing dispute with Harvey over supervision.  Plaintiff has not alleged that her

---

[68]Complaint for Damages at 18, ¶ 3.12, Docket No. 1.

[69]Id. at 11-12, ¶ 2.36; 12, ¶ 2.40; 17, ¶¶ 3.8-3.9.

speech involved any public discourse about charter schools. Rather, her speech involved the management and operation of the Qargi Academy, thereby making it directly related to her job duties as the principal of Qargi Academy.

This case is similar to Turner v. City and County of San Francisco, 788 F.3d 1206 (9th Cir. 2015). There, Turner was hired as "a survey assistant" by the defendant but alleged that he "was not informed until the day he started work that he had been hired as a 'temporary exempt employee,' rather than as a permanent civil service employee[.]" Id. at 1208. Turner alleged that he would not have left his prior job if he had known that he was not being hired as a permanent civil service employee. Id. Turner alleged that he began speaking out at "staff meetings, union meetings, and face-to-face meetings with Storrs [the Department of Public Works (DPW) manager] and DPW officials," about the practice "of using temporary exempt employees 'in violation of civil service rules.' He also repeatedly asserted that he and other temporary exempt employees were regularly assigned to work on matters inappropriate to someone in 'temporary exempt' status[.]" Id. at 1209. Turner alleged that "Storrs and DPW blocked [his] attempts at promotion, and 'intervened to overturn a permanent surveying job offer that had been extended to Turner for work at the City's airport.'" Id. Turner alleged that he "wrote to the human resources agent handling the position and told her that he planned to expose these policies, and to report them to whatever authority would hold Storrs and DPW responsible." Id. Turner alleged that "[s]hortly thereafter, [he] was summoned to a meeting with a human resources representative, Storrs,

-19-

and Storrs's supervisor, during which he was 'asked hostile and intimidating questions by Storrs.'" Id. Turner alleged that at the meeting he "restated his concerns about the unlawful practices, and immediately after the meeting, Storrs informed Turner that he would be fired. The next day, DPW Director Ed Reiskin sent Turner a letter confirming his termination." Id. Turner brought suit against the City, asserting, among other claims, "a claim for retaliation under the First Amendment. . . ." Id. The district court dismissed Turner's First Amendment claim pursuant to Rule 12(b)(6) and Turner appealed. Id. at 1210. Turner argued "that the content of his complaints at staff meetings, union meetings, and face-to-face meetings with DPW officials f[ell] squarely within the bounds of 'public concern,' and that the 'form and context' of his speech support such a finding." Id. at 1211. Turner argued that he "spoke to City officials 'about what he perceived to be the unlawful hiring and use of temporary exempt employees in direct contravention of the City Charter.'" Id. The court of appeals however "conclude[d] that the form and context of Turner's speech weighs strongly against finding that First Amendment protection is warranted." Id. The court explained that

> Turner voiced his grievances internally—at union meetings, to his supervisor, and to Human Resources—and they were specifically related to the conditions of his employment. Turner could have pursued a complaint with the San Francisco Civil Service Commission, gone to the Board of Supervisors for the City and County of San Francisco, gone to the press, or other-wise attempted to air his concerns in a public forum. He did not do so. In addition, Turner's complaints clearly arose out of an ongoing personnel dispute with Storrs and DPW about his alleged misclassification as a temporary exempt employee rather than a permanent employee. Moreover, . . . there is no indica-tion that Turner sought broad-based union action or relief on

-20-

> behal of other similarly situated employees. Such "individual
> personnel disputes and grievances" are "generally not of public
> concern."

Id. at 1211-12 (quoting Desrochers, 572 F.3d at 710).

Similarly here, plaintiff has alleged that she spoke out about issues that were part of her job duties, which involved "manag[ing] the day to day activities of the Academy[,]"[70] overseeing the financials of the school, and dealing with staffing issues or concerns. The speech plaintiff alleges is protected involved these exact issues. In addition, like the plaintiff in Turner, plaintiff has not alleged that any of this speech was made in a public forum. Rather, plaintiff alleges that her speech was directed to Harvey, members of the NSBSD Board of Education, and the APC. Like the plaintiff in Turner, plaintiff has alleged that she "voiced h[er] grievances internally[,]" as opposed to engaging in public discourse. Id. at 1211.

In sum, plaintiff has not adequately alleged that she spoke on matters of public concern as a private citizen as is required to state a plausible First Amendment claim. Thus, plaintiff has failed to state plausible § 1983 First Amendment claims. Plaintiff's § 1983 First Amendment claims are dismissed.

Defendants next move to dismiss plaintiff's § 1983 due process claims. Plaintiff alleges that Harvey violated her due process rights "when she used her position of authority over NSBSD finances to unlawfully terminate [plaintiff's] employment and appoint, on her

---

[70]Complaint for Damages at 18, ¶ 3.10, Docket No. 1.

-21-

own assumed authority, another individual to serve as Qargi's Principal."[71]  Plaintiff also alleges that Harvey violated her due process rights "when [she] authorized an investigation into complaints by a Qargi employee" and then "published" the results "to the NSBSD Board of Education all the while knowing that the Board of Education was to act as the appellate body in any employee disputes between Qargi's Principal and its APC."[72]  Plaintiff alleges that this action by Harvey deprived her of the "ability to obtain appellate review should the need have emerged."[73]  Plaintiff also alleges that Harcharek violated her due process rights by "call[ing] Qargi APC members, notify[ing] them there was a district investigation into [plaintiff], and [telling them] they should terminate her contract."[74]  Plaintiff alleges that Harcharek's conduct deprived her of her property rights in her employment and "further destroyed her opportunity to due process before the Board of Education, should she have had a need to appeal a dispute between herself and Qargi's APC."[75]

It is not entirely clear from plaintiff's complaint whether she is asserting procedural due process claims, substantive due process claims, or both.  However, in her opposition to the instant motion to dismiss, plaintiff has clarified that she is asserting only substantive due

---

[71]Complaint for Damages at 18, ¶ 3.13, Docket No. 1.

[72]Id. at 18-19, ¶ 3.14.

[73]Id. at 19, ¶ 3.14.

[74]Id. at 20, ¶ 3.19.

[75]Id. at 20, ¶ 3.21.

-22-

process claims. Specifically, she states that she "has made very clear that she is arguing that she did not receive substantive due process."[76] The court takes plaintiff at her word and only analyzes whether she has stated plausible § 1983 substantive due process claims.

"The concept of 'substantive due process' . . . forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (quoting United States v. Salerno, 481 U.S. 739, 746 (1987)). "A substantive due process claim requires proof that interference with property rights was irrational or arbitrary, arguably making unlawful motive a critical element of a substantive due process claim." F.E. Trotter, Inc. v. Watkins, 869 F.2d 1312, 1316 (9th Cir. 1989). "[O]nly the most egregious official conduct can be said to be arbitrary in a constitutional sense." Brittain v. Hansen, 451 F.3d 982, 991 (9th Cir. 2006) (citation omitted). "Such conduct can be shown by conduct intended to injure in some way unjustifiable by any government interest." Id. (citation omitted).

Defendants contend that plaintiff's "due process argument--that only the APC had authority over her and could afford her due process--rests on her erroneous interpretation of the Alaska statute that governs the organization and operation of charter schools."[77] AS 14.03.255(a) provides:

---

[76]Opposition to Motion to Dismiss at 14, Docket No. 13.

[77]Memorandum in Support of Defendants' Motion to Dismiss at 17, Docket No. 10.

-23-

> A charter school operates as a school in the local school district except that the charter school (1) is exempt from the local school district's textbook, program, curriculum, and scheduling requirements; (2) is exempt from AS 14.14.130(c); the principal of the charter school shall be selected by the academic policy committee and shall select, appoint, or otherwise supervise employees of the charter school; and (3) operates under the charter school's annual program budget as set out in the contract between the local school board and the charter school under (c) of this section. A local school board may exempt a charter school from other local school district requirements if the exemption is set out in the contract. A charter school is subject to tests required by the department.

Defendants argue that, contrary to plaintiff's contention, this statute does not provide that only the APC of a charter school can terminate a charter school principal. Instead, according to defendants, the statute provides that the APC can select a charter school's principal but it is silent as to who can terminate the charter school principal. Defendants insist that this function is retained by the school superintendent.

Defendants argue that Alaska statutes only exempt charter schools from one facet of a superintendent's usual role, namely the selection of the charter school principal. Defendants argue that is the only statutory exemption that applies to charter schools and that a school superintendent's authority otherwise remains the same as it pertains to charter schools. AS 14.14.130 sets out the functions of a school superintendent, which are primarily to "administer the district in accordance with the policies that the school board prescribes by bylaw." AS 14.14.130(b). Defendants argue that AS 14.03.255 does not exempt a charter school principal from administration or supervision by the superintendent. More important,

-24-

defendants argue that AS 14.03.255 does not provide that a charter school's APC alone will supervise the principal but only provides that the APC will select the principal. Defendants argue that AS 14.03.255(c) very clearly provides that the APC may select the charter school principal and that said principal will control all other charter school employees. But, defendants argue that nothing in AS 14.03.255 exempts a charter school principal from the control and authority of the district's superintendent. Thus, defendants argue that there can be no question that plaintiff was under the control and authority of Harvey. Defendants insist that Harvey "retained authority over administration of the school board's policies across the district, and [plaintiff's] misreading of the statute does not morph her termination grievance and workplace complaints into constitutional claims."[78]

Defendants may be correct that the Alaska statutes did not exempt plaintiff from control of the NSBSD's Board, which acts through its superintendent, which in this case was Harvey. But, AS 14.03.255(a) provides that "[a] local school board may exempt a charter school from other local school district requirements if the exemption is set out in the contract." The NSBSD may have set out provisions in its contract with the Qargi Academy related to who controlled the Qargi Academy principal or who could terminate the Qargi principal. There may also have been some provisions in plaintiff's employment contract related to termination of employment. If the Qargi Academy charter and/or plaintiff's employment contract contained such provisions, then it would be plausible that Harvey's

---

[78]Defendants' Reply [etc.] at 9, Docket No. 14.

conduct was "arbitrary in a constitutional sense." <u>Brittain</u>, 451 F.3d at 991 (citation omitted). But, plaintiff's complaint contains no such allegations. On a Rule 12(b)(6) motion to dismiss, the court can only consider the allegations in plaintiff's complaint. Plaintiff has alleged that it was the Qargi Bylaws that contained a provision that only the APC could terminate the principal. She has not alleged that this was a provision that was in the Qargi Academy's contract with the NSBSD or in her employment contract. Thus, plaintiff's § 1983 substantive due process claims, as currently pled, are not plausible, and these claims are dismissed.

As for plaintiff's state-law whistleblower claims, "[a] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550, 561 (9th Cir. 2010) (quoting 28 U.S.C. § 1367(c)(3)). Because plaintiff's federal claims are being dismissed, her state law whistleblower claims are also dismissed.

Conclusion

Defendants' request for oral argument[79] is denied.

Defendants' motion to dismiss[80] is granted. Plaintiff's complaint is dismissed with leave to amend. It is possible that plaintiff could state plausible § 1983 First Amendment and substantive due process claims in an amended complaint. Plaintiff could also reassert her

---

[79]Docket No. 15.

[80]Docket No. 9.

-26-

state-law claims in an amended complaint. Plaintiff's amended complaint, should plaintiff

elect to file one, shall be filed on or before September 15, 2021.

DATED at Anchorage, Alaska, this 25th day of August, 2021.

/s/ H. Russel Holland
United States District Judge